IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| GLORBMAN LAMONT BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:09-CV-573 |
| | ) | |
| ROWAN COUNTY DETENTION | ) | |
| CENTER, OFFICER J. EWART, | ) | |
| OFFICER A. LANE, NURSE MORGAN, | ) | |
| MASTER DEPUTY FAGGART, | ) | |
| LIEUTENANT LANE, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

The Plaintiff, Glorbman Brown, filed this lawsuit alleging a number of violations of his constitutional rights, arising while he was confined in the Rowan County Detention Center. He asserts that his constitutional rights were violated because he was held in a cell for three days with no water and inadequate toilet facilities and that the Defendants failed to protect him from an assault by another inmate, obstructed his efforts to press criminal charges against the assailant, and interfered with or provided inadequate medical care after the assault. Pending are defense motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) and for summary judgment.

## **PROCEDURAL HISTORY**

Mr. Brown filed this lawsuit on July 29, 2009. While he did not specifically identify causes of actions, the factual allegations focused on the inadequate facilities while he was in segregation and on the assault and its aftermath. In the original complaint, he alleged:

- that Defendant Officer Ewart put him in a detox cell without water or toilet facilities;
- that Mr. Brown told Officer Ewart he wanted to be in protective custody due to threats from known gang members including John Leach, but that Officer Ewart returned him to the regular population;
- that while Mr. Brown was in the regular population, Defendant Officer A. Lane let Mr. Leach out of his cell and into the lunch area, where Mr. Leach assaulted Mr. Brown;
- that Defendant Nurse Morgan gave him ibuprofen after the assault when that was inappropriate treatment; and
- that Defendant Lieutenant Lane "stonewalled" his efforts to place criminal charges against Mr. Leach.

(Doc. 2 at 3). The original complaint was not verified.

On June 30, 2010, shortly after service of process was accomplished, Mr. Brown filed a motion to amend, (Doc. 21), in which he made additional allegations about events following the assault. After the Defendants filed a Motion for a More Definite Statement or to Dismiss, (Doc. 23), Mr. Brown filed a response containing additional allegations. (Doc. 30.)

The Magistrate Judge granted the Motion to Amend and treated pages six through seventeen of Mr. Brown's response as an amended complaint. (Doc. 35.) In his Amended Complaint, Mr. Brown alleged:

- that Defendant Ewart refused to place Mr. Brown in protective custody to avoid being assaulted;
- that Defendant Lane let Mr. Leach "out of his cell to attack [Mr. Brown]";

2

- that Defendant Faggart place Mr. Brown in a detox cell without running water or adequate toilet facilities;

- that Defendant Lane denied Mr. Brown access to the courts by denying or delaying his efforts to bring criminal charges against Mr. Leach; and

- that Defendant Morgan did not provide adequate medical care after the assault, gave him ibuprofen for pain which was not recommended, and did not tell officers about his need for lower lights in his cell due to the assault;

(Doc. 30 at 2, 6-17.) The Amended Complaint was verified.

The Defendants thereafter filed an Answer, (Doc. 38), and a Motion to Dismiss. (Doc. 40.) The Magistrate Judge authorized discovery to proceed while the motion was pending, (Doc. 44), and the Defendants filed a Motion for Summary Judgment on June 1, 2012. (Doc. 65.) In support of the Motion for Summary Judgment, the Defendants submitted an affidavit from Defendant Lane, (Doc. 65-1), and a document which appears to be a law enforcement record. (Doc. 66-1.) Mr. Brown did not submit any evidence in opposition to the motion. (*See* Docs. 70 and 72.)

The Court will treat the Amended Complaint as raising four causes of action: 1) Defendants violated Mr. Brown's Fourteenth and Eighth Amendment rights by placing him in a cell with inadequate water and toilet facilities; 2) Defendants violated Mr. Brown's Eighth Amendment rights by failing to protect him from the assault by another inmate; 3) Defendants violated Mr. Brown's due process rights by interfering in his pursuit of criminal charges against his assailant; and 4) Defendants violated Mr. Brown's Eighth Amendment rights by providing inadequate medical care after the assault. (*See* Doc. 30 at 2.)

# FACTS

The Amended Complaint was sworn to by Mr. Brown, (*see* Doc. 30 at 17), and thus is considered as an affidavit. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). In connection with the summary judgment motion, the Court will consider the records[1] attached to Mr. Brown's original Complaint, (Doc. 2 at 5-38), and his Motion to Amend, (Doc. 21), as well as the law enforcement record submitted by the Defendants, (Doc. 66-1), as it appears these documents are all business records and no question has been raised as to their authenticity.[2] Mr. Brown has also submitted various documents during the course of the proceedings which constitute affidavits, and the Court will consider those in connection with the summary judgment motion, to the extent they are based on personal knowledge and relevant to the claims set forth in the Amended Complaint. (Docs. 22, 31, 42.) The recitation of facts that follows takes the evidence in the light most favorable to Mr. Brown.

In October 2006, Mr. Brown was a pretrial detainee in the Rowan County Detention Center. (Doc. 30 at 2.) On October 17, 2006, Mr. Brown was told by detention officer Davis to move into another cell with Brian Leach. (Doc. 30 at 6.) Mr. Brown told Officer Davis that he was a "personal enemy" of Brian's brother, John Leach; that John Leach was a known gang member; and that he did not want to be in a cell with Brian. *Id.* He refused to move into the other cell and as a result, was "written up for disobeying a direct order" and placed in "detox," a solitary observation cell, by Officer Faggart. *Id.*

---

[1] The Court assumes the materials identified as coming from "WebMD 7 April 2007," (Doc. 2 at 18-20), were provided to the Defendant at the hospital and will consider them for that purpose only.

[2] Mr. Brown has made several sworn statements in the record referencing these documents, to the extent they require authentication. The Defendants provided no testimony about the law enforcement record they submitted.

While in the detox cell, Mr. Brown alleges and affirms that he "was kept there for three days without a water supply. I was refused a shower and hygiene and did not receive a food tray at times. Also I was forced to urinate and defecate in a hole in the floor, which was flushed from outside of my cell at the officers [sic] convenience. (Again no water supply to wash after urinating & defecating)." (Doc. 30 at 6-7.)

On October 18, 2006, while in lockdown, Mr. Brown asked to be "placed on P.C. [protective custody] because of threats from Blood and Cryp gangs in Pod." (Doc. 2 at 7.) Officer Ewart agreed to accommodate this "if possible," *id.*; (Doc. 30 at 7), but instead Mr. Brown was released from lockdown on October 28, 2006, (Doc. 2 at 8), and "denied P.C." (Doc. 30 at 7.)

On November 22, 2006, Mr. Brown was in a jail cell pod cleaning up lunch trays. *Id.* John Leach was in a cell "on twenty-three (23 hr.) hour admin. segregated Lock-down [sic]," but Officer Lane let Mr. Leach out of his cell. (Doc. 30 at 8.) Mr. Leach assaulted Mr. Brown by punching him and slamming him into the concrete floor. (*Id.*; *see also* Doc. 65-1 at ¶ 3.) Mr. Brown was transported to Rowan Medical Center and treated there; the physician at the hospital authorized his return to the jail, pending CT scan results. (Doc. 2 at 16.)

While at the hospital, Mr. Brown was given materials about his injury, which included directions not to take ibuprofen. (Doc. 2 at 19.) On his return to the jail, the nurse on duty, Defendant Morgan, administered ibuprofen and authorized use of an extra pillow. (Doc. 2 at 17, 21; Doc. 30 at 8.) On November 27 or November 29, 2006,[3] Mr. Brown was returned to Rowan Medical for follow-up treatment. (Doc. 2 at 24-26.) He was seen in the Emergency Room at the Wake Forest University Baptist Medical Center on November 30, and it appears he was admitted

---

[3] The medical records are not clear. It may be that he was seen both days. This factual uncertainty in the record is not material.

5

for treatment of hyphema and high intraocular pressure. *Id.* at 27-32. He was discharged on December 1, 2006. *Id.* at 31.

On December 14, 2006, Mr. Brown sent the Detention Center a request form asking "what kind of charge will be taken out on John Leach for inflicting body harm on Glorbman Brown in pod on 11-22-06?" (Doc. 2 at 35; Doc. 30 at 10.) On December 15, 2006, Lieutenant Lane responded that "charges can be taken out by Inmate Brown. Inmate will need to talk with [magistrate]." (Doc. 2 at 35; Doc. 30 at 11.) On December 17, Mr. Brown sent another request saying that he wished to proceed against Mr. Leach and to speak with a magistrate when possible. (Doc. 2 at 36; Doc. 30 at 11.) Defendant Ewart responded that he would speak to the magistrate about "getting you over to take out charges." (Doc. 2 at 36; Doc. 30 at 11.) On December 19, Defendant Ewart escorted Mr. Brown to the magistrate's office, where they learned that a law enforcement officer needed to be involved because the alleged crime was a felony. (Doc. 2 at 38; Doc. 30 at 11.)

On January 2, 2007, Defendant Ewart informed Mr. Brown that Detective Henline had been assigned to the case. (Doc. 2 at 38.) Defendants produced evidence that Detective Henline spoke to Mr. Brown about the assault on January 3, 2007. (Doc. 66-1 at 2.) According to Defendants' evidence, Mr. Brown refused to make a statement without his attorney being present. *Id.* at 3. Detective Henline called Mr. Brown's attorney to advise him of the situation. *Id.* Detective Henline again spoke with Mr. Brown on January 13 and January 23, and Mr. Brown continued to be unwilling to speak about the assault. *Id.* at 3-4. Detective Henline recommended that the investigation be closed. *Id.* at 4.

Over the next year, Mr. Brown continued to receive treatment for the injury to his eye. On April 24, 2007, his doctor provided a note recommending dim light, (Doc. 21 at 16, Doc. 30

6

at 14), but jail officials refused to permit Mr. Brown to dim the cell and instead took away his linens and threatened him. (Doc. 30 at 13-15.) In the fall of 2007, Nurse Morgan delayed in providing Mr. Brown with an eye patch. (Doc. 30 at 12-13.)

## ANALYSIS

### I. Legal Standards

The Defendants have filed a motion to dismiss all of Mr. Brown's claims. Dismissal is proper under Rule 12(b)(6) of the Federal Rules of Civil Procedure if a complaint, viewed in the light most favorable to the plaintiff, "does not allege 'enough facts to state a claim to relief that is plausible on its face.'" *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). As to this motion, the Court will take the facts as alleged by the Plaintiff.

The Defendants have also filed a motion for summary judgment as to Mr. Brown's claim concerning their failure to prevent the assault. Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." As to this motion, the Court views the evidence in the light most favorable to the Plaintiff. *See Smith v. Ozmint*, 578 F.3d 246, 250 (4th Cir. 2009).

### II. Conditions During Solitary Confinement

Conditions of confinement of pretrial detainees are evaluated under the due process clause of the Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). If a restriction is imposed upon a detainee for a legitimate, non-punitive purpose and is not excessive to meet its goal, it will be upheld. *Id.* at 538-39. To establish that conditions of confinement amount to a constitutional violation, a plaintiff must show that the conditions resulted "in the denial of the

minimal civilized measures of life's necessities," and that prison officials were deliberately indifferent to the plaintiff's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1970); *see also Kirby v. Blackledge*, 530 F.2d 583, 587 (4th Cir. 1976) (reversing district court's grant of summary judgment where prisoners alleged that they were placed in a cell with no bedding, light, or toilet facilities, save a hole in the floor; that there was no air circulation in certain cell blocks; and that cells were covered with filth and vermin); *Simpson v. Unnamed Union Cnty. Sheriff's Deputies*, 2010 WL 1328381, at *3 (W.D.N.C. Apr. 1, 2010) (dismissing prisoner's § 1983 complaint alleging that he was housed a in cell without water, when there was no allegation he was denied water outside of his cell); *Minifield v. Butikofer*, 298 F. Supp. 2d 900, 904 (N.D. Cal. 2004) (granting defendants' motion to dismiss prisoner's claim that he was deprived of water and ventilation for five hours); *Jackson v. Wiley*, 352 F. Supp. 2d 666 (E.D. Va. 2004) (granting defendants' motion to dismiss prisoner's claim that he was placed in a dirty cell without running water), *aff'd* 103 F. App'x 505 (4th Cir. 2004).

In the Amended Complaint, Mr. Brown alleges that on October 17, 2006, Defendant Faggart "placed plaintiff in a Detox cell (solitary observation area) without a water supply, denied plaintiff a way to wash, Hygiene supplies . . . , and was forced to urinate and defecate in a hole in the floor for several days . . . . Violating plaintiff constitutional rights of 'Due Process' under the Fourteenth Amendment and being 'deliberately Indifferent' to plaintiff's safety from harm . . . under the Eighth (8th) Amendment." (Doc. 30 at 3-4, 6-7.)

This is sufficient to state a claim under Rule 12(b)(6) as to Defendant Faggart. No allegations are made as to any other Defendant in connection with this claim. Therefore the motion to dismiss this claim should be granted as to all Defendants except Mr. Faggart, as to whom it should be denied.

8

Case 1:09-cv-00573-CCE-LPA   Document 75   Filed 10/30/12   Page 8 of 13

The Defendants did not address this matter in the Motion for Summary Judgment, (Doc. 65), and the Court does not perceive that a motion for summary judgment has yet been made as to this claim.

### III. Failure to prevent the assault

The Fourth Circuit has set forth the relevant law for analyzing an inmate's § 1983 claim that prison officials failed to protect the inmate from violence:

> The Eighth Amendment imposes a duty on prison officials to protect prisoners from violence at the hands of other prisoners. Not every injury suffered by a prisoner at the hands of another establishes liability against a prison official, however. To make a valid claim under the Eighth Amendment, a prisoner must satisfy two elements. First, the deprivation alleged must be sufficiently serious. . . . Second, a prisoner must demonstrate that the prison official had a sufficiently culpable state of mind.

*Brown v. N.C. Dep't of Corr.*, 612 F.3d 720, 722-23 (4th Cir. 2010) (internal citations and quotation marks omitted). To satisfy the second prong, the inmate must show that the prison official was deliberately indifferent to inmate health or safety. *Id.* at 723 (quoting *Odom v. S.C. Dep't of Corr.*, 349 F.3d 765, 770 (4th Cir. 2003)). Thus, the inmate must show that prison guards knew that he faced a serious danger to his safety and could have but failed to do something to prevent the danger. *Id.*

In this case, Mr. Brown has produced medical records and his sworn testimony sufficient to establish a serious injury. However, he has produced no evidence of a culpable state of mind. While he affirmed that he asked for "protective custody" because of threatened gang violence, (Doc. 30 at 7), Mr. Brown has not produced any evidence that his attacker had made threats against him, much less that the Defendants knew that he was at risk of harm from his attacker. He asserts that the Defendants "did not follow policy on the handling of administrative segregation [of] inmate John Leach," (Doc. 70 at 3), and that this led to the assault, but he has

9

provided no evidence of the jail's policy. There is no evidence he provided specific information to any Defendant about who made threats against him or what those threats were.

Specifically as to Defendant Lane, Officer Lane has sworn that she was unaware of any potential conflict between Mr. Brown and Mr. Leach and had not seen any evidence of such over the previous several days. (Doc. 65-1 at ¶ 4-5.) Mr. Brown has produced no evidence to the contrary, and he has produced no evidence Officer Lane knew about his fears of gang violence. Mr. Brown has not alleged that she failed to stop the assault once it began.[4] Specifically as to Officer Ewart, Mr. Brown initially alleged that he informed Officer Ewart of generalized concerns about his safety, (Doc. 2 at 7), but he has provided no evidence to support this allegation. There is no evidence that Defendants Faggart, Morgan, or Lieutenant Lane had any involvement in any decisions related to Mr. Leach or Mr. Brown leading up to the assault.

Because there is no evidence that any Defendant knew Mr. Brown faced a serious danger to his safety, the Defendants are entitled to summary judgment on this claim.

**IV. Interference with the criminal investigation of the assault**

Mr. Brown makes reference to the Fourteenth Amendment and to access to the courts, so the Court will assume that Mr. Brown contends the Defendants violated his due process rights by failing to follow up on his requests to press criminal charges against his attacker. *See generally Bounds v. Smith*, 430 U.S. 817 (1977) (discussing prisoners' constitutional right of access to the courts). Mr. Brown has alleged that Defendant Ewart took him to the magistrate's office to press charges, but that this was unsuccessful since the charge would be a felony and required the involvement of a law enforcement officer. (Doc. 2 at 38; Doc. 30 at 11.) He has further alleged

---

[4] There is a statement in the file from someone purporting to be a witness to the assault which could be read to support that kind of allegation, (Doc. 28), but Mr. Brown himself has not made that claim in either the original Complaint or the Amended Complaint.

that he asked on several occasions to pursue the criminal charges before and immediately after the trip to the magistrate's office. (Doc. 2 at 35-37; Doc. 30 at 10-12.)

Mr. Brown does not allege that Defendants did anything specific to prevent him from pursuing criminal charges, and the law enforcement report submitted by the Defendants in fact shows that the Defendants reported the assault to authorities. (Doc. 66-1.) Putting aside that report and assuming that Mr. Brown's complaint sufficiently alleges that Defendants denied him access to the appropriate channels by which to press criminal charges, the complaint fails to state a claim upon which relief can be granted. "No citizen has an enforceable right to institute a criminal prosecution." *Lopez v. Robinson*, 914 F.2d 486, 494 (4th Cir. 1990). Accordingly, an inmate does not state a constitutional claim by alleging that he was denied the right to press criminal charges. *See McWilliams v. McCormick*, 2008 WL 2810277, at *2-3 (E.D. Tex. Jul. 21, 2008) ("[Plaintiff] has no judicially cognizable interest in having [another person] criminally prosecuted, and so he has failed to show that he has suffered any cognizable harm in the fact that he was not permitted to request that such charges be brought."); *Breckenridge v. Thompson*, 2008 WL 899225, at *1 (W.D. Va. Apr. 1, 2008) (holding that plaintiff's rights were not violated by decision not to institute a criminal prosecution based on plaintiff's complaints).

The Defendants' motion to dismiss this claim should be granted.

### V. Medical care after the assault

Deliberate indifference by prison personnel to an inmate's serious illness or injury is actionable under 42 U.S.C. § 1983 as constituting cruel and unusual punishment contravening the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976). To prove "that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or

11

to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990). "A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." *Id.* "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999).

     Mr. Brown makes several allegations concerning the medical care he received after the assault. First, he alleges that Nurse Morgan gave him ibuprofen after he returned from his first visit to the hospital despite information from the emergency room that ibuprofen was inappropriate for someone with his injury. (Doc. 30 at 8; Doc. 2 at 17, 19, 21.) However, he has not alleged that Defendant Morgan saw the materials Mr. Brown received from the hospital or that giving ibuprofen to someone with Mr. Brown's injuries violated the standard of care for a negligence case, much less the "substantial risk of danger" showing required in a § 1983 case. *See Young v. City of Mount Ranier*, 238 F.3d 567, 576-77 (4th Cir. 2001) (holding that allegations that prison officials knew or should have known about potential risks "at most support an inference that the defendants were negligent in some unidentified way" and were insufficient to support a deliberate indifference claim).

     Second, Mr. Brown alleges that the jail refused to allow him to turn the lights down in his cell despite a recommendation from his doctor that this be done. (Doc. 30 at 13-15.) He has not alleged that there was a substantial risk of danger as a result of the lighting decision or even that he was harmed by the lights in his cell. Thus the complaint is insufficient to state a claim. To the extent Mr. Brown is asserting that other aspects of his medical care violated his constitutional rights, those claims are not clearly set forth and are insufficient to establish a constitutional violation. To the contrary, the medical records Mr. Brown has submitted establish that Mr.

12

Case 1:09-cv-00573-CCE-LPA   Document 75   Filed 10/30/12   Page 12 of 13

Brown was promptly taken to the hospital after the assault and taken back for additional care and treatment on numerous occasions. Nothing in the medical records provided indicates any unreasonable delays in treatment.

The Defendants' motion to dismiss this claim should be granted.

## CONCLUSION

The Defendants are entitled to summary judgment on Mr. Brown's claim that they failed to prevent the assault. The claim concerning the conditions of Mr. Brown's confinement in the detox cell is dismissed as to all Defendants except Mr. Faggart for failure to state a claim. Mr. Brown's remaining claims are dismissed for failure to state a claim.

It is **ORDERED** that:

1. The Motion to Dismiss, (Doc. 40), is **DENIED** as to Mr. Brown's claim against Mr. Faggart concerning the conditions of Mr. Brown's confinement in the detox cell.

2. The Motion for Summary Judgment, (Doc. 65), is **GRANTED** as to the claim against all Defendants concerning their failure to prevent John Leach's assault of Mr. Brown.

3. The Motion to Dismiss, (Doc. 40), is otherwise **GRANTED** as to all other claims and Defendants.

4. The only claim remaining in the lawsuit is Mr. Brown's claim against Mr. Faggart concerning the conditions of Mr. Brown's confinement in the detox cell. Any summary judgment motion related to this claim shall be filed no later than November 19, 2012.

This the 30th day of October, 2012.

_____
UNITED STATES DISTRICT JUDGE