IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| GLORBMAN LAMONT BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:09-CV-573 |
| | ) | |
| MASTER DEPUTY FAGGART, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

The Plaintiff, Glorbman Brown, filed this lawsuit alleging violations of his constitutional rights arising while he was confined in the Rowan County Detention Center. He asserted that his constitutional rights were violated because he was held in a cell for three days with no water and inadequate toilet facilities and that the Defendants failed to protect him from an assault by another inmate, obstructed his efforts to press criminal charges against the assailant, and interfered with or provided inadequate medical care after the assault. The Court previously granted in part a defense motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), (Doc. 75), leaving only a claim against Master Deputy Faggart based on the conditions of confinement at the jail. Pending is Master Deputy Faggart's motion for summary judgment. (Doc. 76.)

### FACTS

The Amended Complaint was sworn to by Mr. Brown, (*see* Doc. 30 at 17), and thus is considered as an affidavit. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991). In connection with the pending summary judgment motion, the Court will consider the same

materials it considered in connection with the earlier motion, (*see* Doc. 75 at 4), as well as the materials submitted by the defendant in support of this motion, (Docs. 76-1, 76-2), and Mr. Brown's sworn response, (Doc. 84), to the extent it is based on personal knowledge.  The recitation of facts that follows takes the evidence in the light most favorable to Mr. Brown.

In October 2006, Mr. Brown was a pretrial detainee in the Rowan County Detention Center.  (Doc. 30 at 2.)  On October 17, 2006, Mr. Brown was told by detention officer Davis to move into another cell.  (*Id.* at 6.)  Mr. Brown refused to move into the other cell and, as a result, was "written up for disobeying a direct order" and placed in "detox," a solitary observation cell, by Officer Faggart.  (*Id.*; *see* Doc. 2 at 6.)

While in the detox cell, Mr. Brown alleges and affirms that he "was kept there for three days without a water supply.  I was refused a shower and hygiene and did not receive a food tray at times.  Also I was forced to urinate and defecate in a hole in the floor, which was flushed from outside of my cell at the officers [sic] convenience.  (Again no water supply to wash after urinating & defecating)."  (Doc. 30 at 6-7.)  Mr. Brown repeats this in his response to the summary judgment motion.  (Doc. 84 at 2.)  He further affirms that he "reported that he was not getting meals, water, or shower [sic] to Master Deputy Faggart and was ignored by the officer." (*Id.* at 5.)  He does appear to concede that he was given water by the officers from time to time, as the officers' other duties allowed.  (*Id.* at 5.)

The defendant has offered additional evidence which the plaintiff has not disputed.  The Rowan County Jail has several solitary cells used for administrative segregation when an inmate violates jail rules or orders.  (Doc. 76-2 at ¶¶ 4-5.)  When all are full, the detox cell is used.  (*Id.* at ¶ 5.)  The detox cell is close to the officer's station.  (*Id.*)  It has a bed, but no toilet, sink, or wash basin.  There is a hole in the floor for elimination of human waste.  Officers control the

flushing of waste by a button outside the cell. (*Id.* at ¶ 6.) When Mr. Brown was confined, Master Deputy Faggart worked the night shift in the jail. (Doc. 76-1 at ¶ 4.) No meals are served during the night shift. (*Id.* at ¶ 9.) Master Deputy Faggart did not make the final decisions as to which cells were assigned to which inmates, was not responsible for setting jail policies on showers, and did not make decisions on her own as to where to assign or move an inmate. (*Id.* at ¶ 7.)

## ANALYSIS

### I. Legal Standard

Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court views the evidence in the light most favorable to the Plaintiff. *See Smith v. Ozmint*, 578 F.3d 246, 250 (4th Cir. 2009).

### II. Conditions During Solitary Confinement

Conditions of confinement of pretrial detainees are evaluated under the due process clause of the Fourteenth Amendment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979). "The due process rights of a pretrial detainee are at least as great as the eighth amendment protections available to the convicted prisoner; while the convicted prisoner is entitled to protection only against punishment that is 'cruel and unusual,' the pretrial detainee, who has yet to be adjudicated guilty of any crime, may not be subjected to *any* form of 'punishment.'" *Martin v. Gentile,* 849 F.2d 863, 870 (4th Cir. 1988); *accord Slade v. Hampton Roads Reg'l Jail*, 407 F.3d 243, 250 (4th Cir. 2005).

While detainees have a right to be free from punishment, "not every inconvenience encountered during pretrial detention amounts to 'punishment' in the constitutional sense."

*Martin*, 849 F.2d at 870. If a restriction is imposed upon a detainee for a legitimate, non-punitive purpose and is not excessive to meet its goal, it will be upheld. *Wolfish*, 441 U.S. at 538-39. Indeed, the Supreme Court has held that, because of the "legitimate interests that stem from [their] need to manage the facility in which the individual is detained," government officials may impose "administrative measures that go beyond those that are, strictly speaking, necessary to ensure that the detainee shows up for trial. For example, the Government must be able to take steps to maintain security and order at the institution . . . ." *Wolfish,* 441 U.S. at 540. Moreover, the Supreme Court has emphasized that decisions about such matters fall "'peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.'" *Id.* at 548 (quoting *Pell v. Procunier,* 417 U.S. 817, 827 (1974)).

Accordingly, to show that a condition of his confinement constitutes impermissible punishment, a pretrial detainee must prove "either that it was (1) imposed with an expressed intent to punish or (2) not reasonably related to a legitimate nonpunitive governmental objective, in which case an intent to punish may be inferred." *Martin,* 849 F.2d at 870 (citing *Wolfish,* 441 U.S. at 538-40). Moreover, a pretrial detainee must show that he suffered more than a de minimis injury. *See Wolfish,* 441 U.S. at 539 n.21 (citing *Ingraham v. Wright*, 430 U.S. 651, 674 (1977)). Finally, the detainee must make a further showing if jail officials imposed the restriction as "punish[ment] for misconduct that occur[red] while he [was] awaiting trial in a pretrial confinement status." *Rapier v. Harris*, 172 F.3d 999, 1003 (7th Cir. 1999). In other words, the detainee must show that the officer's action is more than merely "an incident of some other legitimate governmental purpose," *Wolfish*, 441 U.S. at 538, such as enhancing the

4

officer's safety or the safety of others or ensuring the presence of plaintiff at trial.  *See Robles v. Prince George's Cnty.*, 302 F.3d 262, 269-270 (4th Cir. 2002).

Mr. Brown first appears to claim that it violates due process for a jailer to place a pretrial detainee on administrative segregation in a cell like the detox cell.[1]  The defendant does not contend that there were any special circumstances requiring that Mr. Brown be placed in a cell with no toilet or sink, such as prior incidents of vandalism.  Rather, the defendant contends it was acceptable to place Mr. Brown in the detox cell for a short period of time because he was on administrative segregation and the detox cell was the only cell available.

As noted *supra,* "the Government must be able to take steps to maintain security and order at the institution."  *Wolfish,* 441 U.S. at 540.  It is reasonable to house inmates who refuse to follow directions in more closely controlled circumstances.  (*See* Doc. 76-2 at ¶ 4.)  It is not a constitutional violation to place a segregated detainee for a short period of time in a cell with no running water or toilet or access to a shower for managerial reasons, so long as the detainee's basic needs are met.  *See Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1573-74 (11th Cir. 1985).  Here, Mr. Brown concedes that there was a hole for disposal of waste and that officers could and did flush water into the hole.  The defendant's evidence is that the jail's policy was to flush the waste upon request of the inmate, to provide showers every three days, and to provide regular meals and water to persons in the detox cell.  (*See* Doc. 76-2 ¶¶ 6-7.)  Mr. Brown offers no

---

[1] Mr. Brown does not claim that he was deprived of due process protections before his segregation, and, in fact, the evidence shows that he was given notice of his segregation and an opportunity to be heard.  (Doc. 2 at 6); *see Higgs v. Carver*, 286 F.3d 437, 438 (7th Cir. 2002) (citing *Rapier*, 172 F.3d at 1004-05, and *Mitchell v. Dupnik*, 75 F.3d 517, 524-25 (9th Cir. 1996).

5

evidence to the contrary. Thus, to the extent Mr. Brown contends that use of the detox cell by itself is a violation of due process, his claim fails.[2]

Mr. Brown further asserts that his due process rights were violated because he was deprived of meals and water upon request and was not allowed a shower while in the detox cell.[3] Mr. Brown alleges that he informed Master Deputy Faggart of this and was "ignored." While not completely clear, this appears to have happened only once.

As to the meals, it is not clear how many meals Mr. Brown was served during his time in the detox cell. The defendant asserts Mr. Brown was not deprived of any meals; Mr. Brown says he did not receive a food tray "at times." Putting this question aside, it is clear from the evidence that Master Deputy Faggart only worked at nights when no meals were served, so she could not have failed to serve meals to Mr. Brown. As to water, the undisputed evidence is that jailers would provide water to drink in cups upon request, subject to their other duties. Mr. Brown does not claim he was denied water for the entire three days. It is not a due process violation to fail to immediately provide a glass of water in response to an inmate request. *See Tesch v. Cnty. of Green Lake*, 157 F.3d 465, 476 (7th Cir. 1998) ("Correctional officials are not required to provide comfortable jails, even for pretrial detainees. . . . [I]t is not unreasonable for a pretrial

---

[2] To the extent Mr. Brown claims that he was not permitted to wash his hands for three days, the Court expresses no opinion on whether such a restriction is consistent with due process. Even if it is, Master Deputy Faggart is not liable, as she was not responsible for any three-day prohibition on hand washing; she was on duty only overnight and Mr. Brown does not contend that he complained to her about any such prohibition.

[3] Mr. Brown offers no evidence that the officers failed or refused to flush the waste out of the cell on a regular basis, and no evidence that the cell was dirty. The defendant's evidence is that the officers did regularly flush the waste.

6

detainee to expect to experience a short-term imposition on a basic human necessity.") Finally, it is not a violation of due process to allow detainees to shower only every three days.[4] *See id.*

Because Mr. Brown was not constitutionally entitled to be given food or water upon demand or showers more often than every three days, has not offered evidence of any special circumstances or harm from any short term delays in delivery of food or water, and has not offered evidence that Master Deputy Faggart acted with deliberate indifference to his needs, Mr. Brown's due process claim fails.

## CONCLUSION

The Defendant is entitled to summary judgment on Mr. Brown's claim concerning the conditions of Mr. Brown's confinement in the detox cell. As this is the only issue remaining in this case, judgment will be entered in favor of the defendant, as the Court's schedule permits.

It is therefore **ORDERED** that Defendant's Motion for Summary Judgment, (Doc. 76), is **GRANTED**.

This the 28th day of January, 2013.

_____
UNITED STATES DISTRICT JUDGE

---

[4] Though the Fourth Circuit appears to apply the *Wolfish* standard to a pretrial detainee's conditions of confinement claims, *see Slade*, 407 F.3d at 250-51, several other circuits apply the Eighth Amendment "deliberate indifference" standard to such Fourteenth Amendment claims, and at least one—the Fifth Circuit—has adopted a hybrid approach, applying the deliberate indifferent standard to claims, like Mr. Brown's, that are based upon an episodic act or omission of a jail official rather than a jail policy or practice. *See Hare v. City of Corinth*, 74 F.3d 633, 648-50 (5th Cir. 1996); *see generally*, David C. Gorlin, *Evaluating Punishment in Purgatory: The Need to Separate Pretrial Detainees' Conditions-of-Confinement Claims from Inadequate Eighth Amendment Analysis*, 108 Mich. L. Rev. 417, 426 (2009). There is no evidence that Master Deputy Faggart acted with deliberate indifference to Mr. Brown's request.